# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CHARLIE GORDON EPLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-CV-111 |
| ) | REEVES/STEGER |
| WALGREENS COMPANY ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff, Charlie Gordon Epley, brings this action against his former employer, Walgreens Company, alleging he was terminated from his position as a pharmacist because of his age and disability, in violation of the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Tennessee Human Rights Act, and the Tennessee Disability Act,

Before the court is Walgreens' motion for summary judgment [R. 21]. Walgreens contends that Epley cannot establish a claim for disability or age discrimination. Alternatively, Walgreens contends it has presented legitimate, nondiscriminatory reasons for its decision to terminate Epley. Walgreens contends Epley was terminated for repeated violations of its attendance policy. Therefore, Epley cannot establish that he was terminated because of his age or disability. In addition, Walgreens contends Epley's claims brought under the Tennessee Disability Act and the Tennessee Human Rights Act are barred by the applicable statutes of limitations. Nor can Epley meet the requirements under

the Americans with Disabilities Act for failure to provide reasonable accommodation because Epley never requested an accommodation. Last, Walgreens contends Epley's retaliation claims fail because he did not engage in any statutorily protected activity until after the decision to terminate his employment had already been made. Therefore, Walgreens asks the court to grant it judgment as a matter of law on all of Epley's claims.

Epley has responded in opposition to the motion [R. 25]. Epley states he was a pharmacist for Walgreens for more than twenty-five years. When a new pharmacy manager took over operations at the Western Avenue Store in Knoxville, the manager began a campaign to force Epley to retire or go on disability. When that effort failed, the manager developed pretextual reasons for disciplinary action against Epley. The manager terminated Epley's employment for behaviors for which younger, non-disabled employees were not disciplined. Epley contends that there are material issues of fact regarding his termination and that a jury should decide whether Walgreens discriminated against him when it terminated his employment.

## I. Facts

Epley was hired by Walgreens to work as a pharmacist in 1990. Epley was diagnosed with diabetes in 2006. In 2013, he reduced the number of hours he worked from 40 per week to 32 per week as a result of his health conditions. His shift typically began between 2:00 and 3:00 p.m.

At the time of his termination, Epley worked in various locations, but considered the store on Western Avenue as his "home store." Sloane Cleveland became the Pharmacy Manager of the Western Avenue store in February 2013. Epley noted Cleveland's

friendships with younger pharmacists and pharmacy techs and her disdain for older workers, especially him.

Cleveland prepared yearly evaluation forms for pharmacists starting with the 2014 fiscal year. At his evaluation, Epley made specific mention of his health issues impacting the conditions of his employment. Epley states he was required to work after the end of his shifts due to the cutting of pharmacy hours and the turnover rate of untrained staff. Again, on his 2015 evaluation form, Epley pointed out his health issues to Cleveland. And, on his 2016 evaluation, Epley not only referenced his health issues, he specifically mentioned that they affected various activities, including punctuality.

Epley continued to work at the Western Avenue store and other locations. In September 2015, Epley was recognized for having worked for Walgreens for twenty-five years. Epley states that after the anniversary, Cleveland and many younger pharmacy employees began to make comments about his age. Cleveland also reprimanded him repeatedly for being late to work. Epley contends that prior to Cleveland becoming Pharmacy Manager, Walgreens management did not appear to have any problem with Epley's work performance.

In March 2016, Cleveland counseled Epley that he would need to be on time for his shifts. Epley told her that arriving for his shift by 3:00 p.m. would be no problem and that he would no longer be late. On June 8, 2016, Cleveland issued a Verbal Warning to Epley for several issues, including "being on time." Specifically, Epley had been 30 minutes late on May 27, 2016, and 12 minutes late on June 3, 2016. Epley was also counseled regarding staying late (well past the end of his shift), poor attitude, and failure to include an

3

appropriate Improvement Action Plan (IAP) following a medication error. On October 12, 2016, Cleveland issued a Written Warning for Attendance, which documented the following:

> Since our last meeting on 6/8/16, Chuck has been late at least twelve times.
> Friday 6/24 15 minutes late
> Wednesday 6/29 5 minutes late
> Saturday 7/9 10 minutes late (to open the pharmacy)
> Wednesday 7/13 5 minutes late
> Friday 7/15 9 minutes late
> Wednesday 7/20 5 minutes late
> Wednesday 7/27 10 minutes late
> Friday, 8/12 15 minutes late
> Wednesday 8/24 15 minutes late
> Wednesday 8/31 10 minutes late
> Wednesday 9/7 15 minutes late
> Friday 9/30 5 minutes late
>
> . . .
>
> Continued disregard for being on time will not be tolerated, and further disciplinary action will be taken, up to and including termination, if the pattern of behavior does not get corrected.

[R. 22-10].

Epley acknowledged in his deposition that he was late on each of the dates listed in the Written Warning including the day the Written Warning was issued. He received two additional Written Warnings on October 12, 2016. One warning was for failure to follow instructions, as he had not created an IAP for two separate occasions, after having been instructed to do so during the Verbal Warning on June 8. The other warning was for unprofessional conduct, calling his co-workers "incompetent," and referring to a female pharmacist as "that bimbo." Epley denies these allegations and states that Cleveland issued the disciplinary action against him based on hearsay from younger workers. Epley further

4

avers that Cleveland did not take action against younger employees for falsifying their time records.

In the comments he made in the Written Warning for Attendance, Epley wrote:

> I HAVE TURNED THESE REPRIMANDS & ALL SUPPORTING DOCUMENTS IN TO MY PERSONAL ATTORNEY AND WE ARE CONTEMPLATING FURTHER LEGAL ACTION DUE TO FALSE CHARGES, EXAGGERATION, BLATANT LIES, SLANDER!!

[R. 22-10]. His comments made no mention of discrimination or of his disability or age.

On October 16, 2016, Epley provided a letter to Parker and Cleveland as follows:

> <u>Let's be honest (at least one of us). I know I am OFTEN late for work and plead no contest.</u> To work afternoon shift – I cannot do any yard work – I have to take 2 day naps. To work mornings I have to get up hours before so I can nap. Per Mayo Clinic & Standford [sic] I have a "majorly sever[e] (highest level) sleep disorder" – <u>MOST</u> people at my level commit suicide – <u>FACT</u>!! Add Blood sugars >600 & <40 – Reduced lung capacity, High BP, Type II Diabetes, Uncontrolled <u>Due</u> <u>to</u> <u>Autoimmune</u> Diseases which even EXPERTS say is Worst type of all (called Type 1.5) – Miracle get up at ALL. One doctor told me that I was the "1st Living Dead Man" that He and his colleagues EVER KNEW!!! No matter how much pain / bad I feel – I try to give 110% at work & show up / Late
> . . . .
> Yes, I am often late & often joke about "New Orleans Time" or "Beach Time" but often the jokes keep me from crying . . . . I wish I could "Promise to Always Be on Time" . . . .

[R. 22-13].

In October 2016, after reviewing Epley's performance evaluation, Cleveland raised several allegations against Epley and the related disciplinary citations she had made. Cleveland handed Epley a stack of papers and told him that he needed to give serious consideration to retiring or taking disability. Epley states that at no time, did Cleveland or Michael Parker (the Store Manager) talk to him about the Family and Medical Leave Act

5

or the Americans with Disabilities Act, or tell him that he needed to complete and return any forms, discuss accommodation, or use the terms interactive process or accommodation. Epley did not make any request for accommodation. It was not until Epley filed his complaint that he learned that Cleveland had included documents relating to the ADA among the stack of papers given to him in the October 2016 meeting. Epley states he was unaware of his rights under the ADA including his right to request an accommodation.

On November 12, 2016, Epley received another Written Warning for staying 1.5 hours past the time the pharmacy closed. On November 16, 2016, Epley received a Final Warning for Attendance, this time for being 20 minutes late for work. On February 17, 2017, Epley was 15-20 minutes late for his shift. He told Cleveland he was late because he received a call from the Walgreens' insurance carrier who needed to discuss his health conditions with him. Epley was not disciplined for that incident.

When Epley came to work on April 21, 2017, he was 20 minutes late for his shift. Cleveland met him at the front of the store and took him into the Store Manager's office to meet with her and Parker. The decision to terminate Epley had been made prior to his arrival. Cleveland arranged for Epley to be given the option to retire; if he did not choose to do so, then he would be terminated. Epley said he would need to think about his decision and he left the store. Epley contends that no other pharmacist was terminated for tardiness.

On April 24, 2017, Epley complained for the first time to Walgreens' Employee Relations that he believed he was being discriminated against. Following his complaint, Walgreens investigated the issue and placed his termination on hold while Epley was out on "Paid Time Off." Walgreens concluded its investigation and Epley's employment was

terminated effective May 15, 2017, for his violations of the attendance policy and failure to improve after counseling and disciplinary actions.

## II. Standard for Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft

of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

### III. THRA/TDA CLAIMS

Tennessee law provides that a civil cause of action under the Tennessee Human Rights Act (THRA) "shall be filed . . . within one (1) year after the alleged discriminatory practice ceases." Tenn. Code Ann. § 4-21-311(d). The Tennessee Disability Act (TDA) incorporates the one-year limitations period found in the THRA. *See Jenkins v. Trane U.S., Inc.,* 2013 WL 3272489 at *6 (M.D.Tenn. Jun. 27, 2013). The THRA/TDA causes of action accrued at the latest on May 15, 2017, when Walgreens terminated Epley's employment. The one-year statute of limitations commenced running on Epley's THRA/TDA claims no later than May 15, 2017, and expired one year later on May 15, 2018. Epley was required to file suit in court on his THRA/TDA claims by May 15, 2018. Epley filed this civil action against Walgreens on May 25, 2018, more than one year after the statute of limitations deadline on his THRA/TDA claims had expired.

Although Epley stated in his complaint that he was terminated "on or about May 15, 2017," he now argues that based on Walgreen's COBRA Enrollment Notice sent to him, his actual termination date was May 31, 2017. However, the COBRA Notice clearly states the decision to terminate Epley's employment had been made and communication sent to him by May 18, 2017. The Sixth Circuit has a presumption that mail is received by the

8

person to whom it is addressed within five (5) days of mailing. *See Rucker v. Potter,* 215 Fed. Appx. 406, 408 (6th Cir. 2007). Even if the court assumed that the May 18 COBRA Notice was the first notification Epley had that he had been terminated, the one-year statute of limitations began to run on May 23, 2017, and expired May 23, 2018. Epley's complaint filed May 25, 2018 is still untimely. Accordingly, Epley's THRA/TDA claims against Walgreens are time-barred by the statute of limitations, Tenn. Code Ann. § 4-21-311(d), and must be dismissed.

### IV. ADA/Discrimination

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that he (1) is disabled, (2) is otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of the disability. *Ferrari v. Ford Motor Co.,* 826 F.3d 885, 891 (6th Cir. 2016). If a plaintiff can establish a *prima facie* case, then the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Plant v. Morton Int'l Inc.,* 212 F.3d 929, 936 (6th Cir. 2000). If defendant does so, then plaintiff bears the burden of proving that defendant's proffered reason is a pretext for unlawful discrimination. *Id.*

The parties do not dispute that Epley can establish a *prima facie* case of discrimination. However, Walgreens contends it had a legitimate, non-discriminatory reason for terminating Epley – he was habitually late for work, and despite repeated counseling over the course of a year, he failed to improve his performance. Because Walgreens has proffered a legitimate, non-discriminatory reason for his termination, Epley

9

must produce evidence from which a jury could find that Walgreens' reason is a pretext for unlawful discrimination. To meet this burden, Epley must show that the reason offered by Walgreens (1) had no basis in fact, (2) was not the actual reason for its actions, or (3) was an insufficient basis for its adverse employment action. *Manzer v. Diamond Shamrock Chems.,* 29 F.3d 1078, 1084 (6th Cir. 1994).

Here, there is no dispute that Epley was late on the days for which he was disciplined for tardiness. Following the March 25, 2016 meeting when Cleveland told Epley that he needed to be on time for his shifts, Epley arrived late for 21 out of 28 shifts.

Epley responds he had a long history of health issues and Walgreens was well aware of his health issues when his tardiness became an issue. Epley wrote that his health contributed to his tardiness on all three performance evaluations of him done by Cleveland.

Epley also submits the affidavit of Teri Pearson, a pharmacist with Walgreens from May 1993 until January 2019. Pearson states that she is aware of occasions when younger pharmacists provided false information related to the time they either reported for work or completed their work day. She was not aware of any of the younger pharmacists being disciplined for providing this false information. Pearson states Walgreens' policy was enforced on the basis of "favoritism" of the managers. It was only after Epley was terminated that Walgreens instituted a strict policy subjecting employees to disciplinary action for "even being 5 minutes late." Pearson further states that during the fifteen years she worked with Epley, she was not aware of any complaints from Walgreens about Epley occasionally reporting late for work, or of any instances where he was disciplined for being late, until the last year preceding his termination. Pearson states Cleveland and Parker did

not make complaints or take disciplinary action against any of the younger pharmacists without medical conditions when those pharmacists were late or left early.

Pearson states there was a pattern of discrimination against Epley because of his age and his medical condition during the last year he worked at Walgreens, after Cleveland became pharmacy manager. Prior to this time, Walgreens seemed quite satisfied with Epley's work ethic and performance. Pearson further states that she is aware of other, older pharmacists – some with and some without medical conditions – who also appeared to be targeted by management personnel and treated unfairly in comparison to younger pharmacists. [R. 25-4].

When the facts are viewed in the light most favorable to Epley, genuine issues of material fact exist as to whether Walgreens discriminated against him on the basis of his disability. Given the conflicting nature of the record evidence, it is for the jury to determine which evidence is more credible and persuasive. Further, the disputed evidence also requires a determination of the testifying witnesses' credibility. The credibility of witnesses is peculiarly within the province of the jury, and a trial court should never substitute its opinion of the credibility of witnesses for that of the jury. *Werthamn Bag Corp. v. Agnew*, 202 F.2d 119, 122-23 (6th Cir. 1953). In light of the evidence discussed above and the court's obligation to construe all facts and inferences in a light most favorable to Epley, there is sufficient evidence to preclude summary judgment as to his ADA discrimination claim.

## V. ADA/Failure to Accommodate

The court next considers whether Walgreens failed to engage in the interactive process. The interactive process is a "good-faith exploration" of "the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Keith v. County of Oakland,* 703 F.3d 918, 929 (6th Cir. 2013).

The failure to engage in the interactive process is only actionable if a qualified employee makes a *prima facie* showing that he proposed a reasonable accommodation. *Rorrer v. City of Stow,* 743 F.3d 1025, 1041 (6th Cir. 2014). The employee must initiate the interactive process by requesting an accommodation. *See Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1041, 1046 (6th Cir. 1998) ("There is no question that the EEOC has placed the initial burden of requesting an accommodation on the employee"). Once an employee makes a request, the employer must make a good faith effort to determine the appropriate accommodation. *Id.* If no accommodation is proposed, however, the employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation. *Id.*

It is undisputed that Epley did not request an accommodation from Walgreens. Nor was Walgreens required to speculate about Epley's interest in an accommodation. Although an employee does not need to use specific words to request an accommodation, the employee's intent must be clear from the context. *See Tennial v. United Parcel Serv. Inc.,* 840 F.3d 292, 307 (6th Cir. 2016). Walgreens provided Epley with the appropriate forms to request a reasonable accommodation and/or to request leave under the FMLA.

Epley admits that he never looked at the forms. Nor did he request an accommodation for his tardiness.

Epley avers that his multiple verbal and written references to his health interfering with his punctuality amounted to a request for accommodation. Further, the fact that Walgreens had, for many years, been willing to work with Epley regarding his occasional absences shows that it not only knew of his disability, it knew of the accommodation required to allow him to work successfully.

Walgreens responds that Epley was not disciplined for days on which health issues caused him to be late for work; he was only disciplined on days where there was no indication that his disability played a role in his tardiness citing: January 15, 2016 (doctor's appointment); February 6, 2016 ("not well today"); or January 20, 2017 ("changed meds" which may have affected his blood sugar). Instead, Walgreens only considered the days Epley provided no reason related to his health for his tardiness (car broke down, car battery died, plumbers at his house).

Without any evidence that Epley requested an accommodation, Epley's failure to accommodate claim fails as a matter of law and is dismissed.

## VI. Age Discrimination

Under the Age Discrimination in Employment Act (ADEA), an employer is prohibited from taking adverse employment action against an individual "because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence. *Geiger v. Tower Auto.,* 579 F.3d 614, 620 (6th Cir. 2009). A plaintiff must demonstrate (1) he is a member of a protected class

13

(over age 40), he was subjected to an adverse employment action, (3) he was qualified for the position, and (4) he was replaced by a younger person. *Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir. 1992). Walgreens does not dispute that Epley can establish a *prima facie* case of age discrimination. But, an ADEA plaintiff cannot prove his case by establishing that age was simply a "motivating factor," instead, the plaintiff has the burden of persuasion to establish that age was the "but for" cause of the employer's adverse action. *Gross v. FBL Fin. Servs.,* 557 U.S. 167, 177 (2009).

To prevail at the summary judgment stage, a plaintiff must prove by a preponderance of the evidence that age was the "but for" cause of the challenged employer decision. *Sharp v. Aker Plant Servs. Grp.,* 726 F.3d 789, 798 (6th Cir. 2013). It is evidence which, if believed, requires the conclusion that unlawful discrimination was the motivating factor in the employer's actions. It does not require the factfinder to draw any inferences to reach that conclusion. *Id.*

As discussed above in relation to Epley's ADA discrimination claim, the court finds that the record evidence could support a jury finding that Walgreens targeted him for termination based upon his age. Cleveland favored younger pharmacists while exhibiting disdain for older employees, especially Epley. Epley and other older workers were treated less favorably than younger employees. And, Epley has shown that he was replaced by a younger employee. Walgreens' motion to dismiss the ADEA claim is denied.

## VII.  Retaliation

Epley alleges Walgreens terminated his employment in retaliation for engaging in protected activity under the ADA and ADEA. To establish a claim for retaliation under

14

the ADA or ADEA, a plaintiff must show that (1) he engaged in protected activity; (2) defendant took an adverse employment action against him, and (3) there was a causal connection between the protected activity and the adverse employment action. *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 381 (6th Cir. 2002). A plaintiff must further prove that the alleged retaliation would not have occurred "but for" his protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2533 (2013).

Here, the record shows that Epley did not engage in any protected activity until after the decision to end his employment had already been made and communicated to him. Epley was informed of his termination on April 21, 2017, but he did not contact Walgreens Employee Relations until three days later, on April 24, 2017 to complain of discrimination. Accordingly, Epley's retaliation claim fails as a matter of law and is dismissed.

## VIII. Conclusion

In light of the foregoing discussion, Walgreens' motion for summary judgment [R. 21] is **GRANTED in part and DENIED in part:** The motion is **GRANTED** as to Epley's claims for discrimination under the Tennessee Human Rights Act, the Tennessee Disability Act, for failure to accommodate under the Americans with Disabilities Act, and for retaliation under federal law. Those claims are hereby **DISMISSED, with prejudice.** Epley may proceed on his claims for discrimination under the Americans with Disabilities Act and the Age Discrimination in Employment Act**.**

The court finds that mediation may facilitate a possible resolution of this case. Pursuant to Local Rule 16.4, the court **ORDERS** the parties to mediate this case in good faith within sixty (60) days of the entry of this order. See E.D. Tenn. L.R. 16.4(a) ("With

or without the agreement of the parties in any civil action . . . the court may refer all or part of the underlying dispute to mediation pursuant to his Local Rule"). Within seven (7) days following the conclusion of the mediation, the mediator shall file a report with the court stating the outcome of the mediation, as contemplated by Local Rule 16.4(m). If the parties are unable to resolve this case pursuant to mediation, they shall so report to the court within sixty (60) days of entry of this order.

**IT IS FURTHER ORDERED** that the parties, their representatives and/or actual decisionmakers for the parties, including persons with actual settlement authority on behalf of all the parties to this litigation, shall be present for the mediation. The mediation will include the issues of attorney's fees and costs.

This case is **STAYED** pending further order of the court.

The trial scheduled for November 19, 2019, is **CANCELLED.**

**IT IS SO ORDERED**.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**